**Reversed and Rendered in Part, Affirmed in Part, and Majority and Concurring Opinions filed April 12, 2022.**



In The

# Fourteenth Court of Appeals

### NO. 14-21-00590-CV

## IN THE INTEREST OF L.E.R., A CHILD

**On Appeal from the 314th District Court
Harris County, Texas
Trial Court Cause No. 2018-03438J**

## CONCURRING OPINION

I join the court's opinion except for the section sustaining Mother's legal sufficiency challenge to the predicate termination finding under subsection 161.001(b)(1)(D). As to that issue, I concur in the judgment only. I write separately to explain my reasoning.

In her first issue, Mother challenges the legal and factual sufficiency of the evidence to support the trial court's finding that Mother's parental rights should be terminated for endangerment under Family Code subsection 161.001(b)(1)(D). That finding must be reversed, Mother says, because "Lori was never in Mother's

possession," having been removed at birth by the Department. Because Lori was never in Mother's custody, "it stands to reason that she could not have been responsible for knowingly placing or knowingly allowing the child to remain in conditions or surroundings which endangered the child's physical or emotional health." Mother does not challenge the predicate finding for any other reason.

The court largely accepts Mother's argument. According to the majority opinion,

> . . . domestic violence in Mother's and Father's home, Mother's health issues, the home being in disrepair, Mother being abusive and not providing a safe environment per her service plan, and her extended family not recommending she maintain her parental rights to Lori is not evidence in support of a finding under subsection D. Lori was never in Mother's home or care; Lori never lived with Mother. Therefore, Mother never placed or allowed Lori to remain in conditions or surroundings which endangered Lori's physical or emotional well-being as required by subsection D.

The Supreme Court of Texas, however, has rejected Mother's contention as a universal proposition, and our court errs to the extent it embraces it. *See In re J.O.A.*, 283 S.W.3d 336, 345-46 (Tex. 2009). In *J.O.A.*, the court held that a factfinder may consider circumstances and conduct that occurred before birth and after removal in evaluating section 161.001(b)(1)(D) allegations. *Id.* (citing *In re M.N.G.*, 147 S.W.3d 521, 536 (Tex. App.—Fort Worth 2004, pet. denied)); *see In re A.J.R.*, Nos. 03-19-00661-CV, 03-19-00662-CV, 2020 WL 1174189, at *8 (Tex. App.—Austin Mar. 12, 2020, no pet.) (mem. op.); *Walker v. Tex. Dep't of Family & Protective Servs.*, 312 S.W.3d 608, 617 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). Courts may consider parental conduct that did not occur in the child's presence. *Walker*, 312 S.W.3d at 617. I would be clear that Mother's contention is not always true.

2

The trial court found that Mother knowingly placed or knowingly allowed Lori to remain in conditions or surroundings that endangered her physical or emotional well-being. *See* Tex. Fam. Code § 161.001(b)(1)(D). Subsection 161.001(b)(1)(D) focuses on the child's environment, and the Department had the burden of proving by clear and convincing evidence that this environment endangered the child's physical or emotional well-being. *See, e.g., In re A.S.*, 261 S.W.3d 76, 83 (Tex. App.—Houston [14th Dist.] Mar. 4, 2008, pet. denied). Clear and convincing evidence is "proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *In re J.F.C.*, 96 S.W.3d 256, 264 (Tex. 2002). Children are "endangered when the environment creates a potential for danger that the parent is aware of, but disregards," regardless whether the child actually suffers injury. *See Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987); *In re S.R.*, 452 S.W.3d 351, 360 (Tex. App.—Houston [14th Dist.] 2014, pet. denied); *In re N.B.*, No. 06-12-00007-CV, 2013 WL 1605457, at *9 (Tex. App.—Texarkana May 8, 2012, no pet.) (mem. op.). As the court correctly notes, a subsection (D) termination may be based on a single act or omission. *In re J.E.M.M.*, 532 S.W.3d 874, 884 (Tex. App.—Houston [14th Dist.] 2017, no pet.); *Jordan v. Dossey*, 325 S.W.3d 700, 721 (Tex. App.—Houston [1st Dist.] 2010, pet. denied).

At trial, the Department focused principally, but not solely, on two circumstances as evidence that Mother knowingly placed or knowingly allowed Lori to remain in conditions or surroundings that endangered her physical or emotional well-being. The Department's caseworker testified that Mother requested Lori be placed with her brother, Steven, and his wife, Susan, whom Mother knew to have a "CPS history." Within one month, an incident occurred when Lori was exposed to potential physical injury due to a fall while under the

3

couple's supervision. Although the Department's initial background search of Steven and Susan revealed no Department history or criminal records, the Department later learned that the couple had a prior case with the Department, which was not discovered because the records were under Susan's maiden name. The prior case was ruled "unable to determine." During a subsequent conversation, Mother told the caseworker that she knew about Susan's "CPS history."

The factfinder was permitted to consider this evidence as proof of endangerment under subsection 161.001(b)(1)(D). I agree, however, that the Department failed in its burden to show to a clear and convincing degree that, in recommending Lori's placement with Steven and Susan, Mother was consciously aware of an endangering risk but disregarded it. The Department did not present any details regarding Susan's and Steven's history with the Department and what Mother knew about it. The record reveals only that the Department was unable to determine whether the allegations in that matter were true. But there is no evidence of those allegations or what Mother knew of them. In my view, this evidence does not rise to a clear and convincing demonstration and is not sufficient to create a "firm belief or conviction as to the truth of the allegations sought to be established." *See In re A.P.*, No. 13-20-00258-CV, 2020 WL 6789040, at *5 (Tex. App.—Corpus Christi–Edinburg Nov. 19, 2020, no pet.) (mem. op.) (holding department failed to elicit details as to the type of offenses, dates, or related circumstances showing how father's criminal offenses knowingly placed or knowingly allowed the children to remain in endangering conditions or surroundings); *cf. In re C.F.*, No. 03-21-00250-CV, 2021 WL 5018839, at *8 (Tex. App.—Austin Oct. 29, 2021, pet. denied) (mem. op.) (court heard evidence that father engaged in domestic violence in son's presence and left son in mother's care

on several occasions during monitored return knowing that individuals mother allowed to be around son had criminal and CPS histories, used illegal substances, and were "toxic" and "dangerous"; father admitted that allowing son to remain with mother under such circumstances was unsafe but that he did not attempt to remedy the situation; and father allowed son to be placed in other endangering environments).

Second, the caseworker said that Mother's conduct in physically fighting with hospital staff during Lori's delivery was endangering to Lori. Here again, the Department's evidence lacks factual support sufficient to establish, to a clear and convincing level, that this conduct exposed Lori to an endangering environment. The witness said that Mother kicked so much that her "IV came apart," but there was no evidence that the medical staff was unable to control the situation nor any medical or expert evidence explaining how Mother's actions exposed Lori to potential physical injury.

In its brief, the Department cites other evidence in support of the endangerment finding, but I conclude it is similarly inadequate. For example, the Department points to references in the investigator's affidavit and the Child Advocates report admitted at trial that, according to Father, Mother smoked "two packs of cigars" per day while eight months pregnant with Lori, who was born with "withdrawal" symptoms. But there exists no further development of this line of evidence in the record, no evidence that Lori was underweight at delivery, and no attempt to describe the alleged withdrawal symptoms and link them causally to Mother's pre-natal conduct. Finally, the Department also cites evidence of domestic violence and "strife" between Mother and Father, as well as a physical home entirely unfit for children. In this regard, Mother is correct that Lori was never exposed to these environmental conditions, and this court has said that

subsection 161.001(b)(1)(D) requires proof of a parent's knowing exposure of children to an endangering environment in the past. *In re J.R.*, 171 S.W.3d 558, 570 (Tex. App.—Houston [14th Dist.] 2008, no pet.). The likelihood that Mother will knowingly expose Lori to a dangerous environment in the future—which the Department has established—is relevant to whether termination is in the child's best interest and also would be relevant to the issue of how much contact a parent should have with the child if parental rights are not terminated, but it does not amount to proof of a past act of knowing environmental endangerment. *See id.*

For these reasons, I concur in the judgment.


/s/    Kevin Jewell
Justice


Panel consists of Justices Jewell, Zimmerer, and Hassan. (Hassan, J., majority).